**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond James Schott,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-00389-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff's Application for Title II Disability Insurance Benefits by Defendant. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant's Response Brief (Doc. 13, "Def. Br."), Plaintiff's Reply Brief (Doc. 16), and the Administrative Record (Doc. 11, "R."). Because the Court finds the decision free of legal error and supported by substantial evidence in the record, it will affirm the decision.

**I.   BACKGROUND**

On November 9, 2011 Plaintiff was working in demolition when a gas-powered saw he was using exploded in his hands. (Pl. Br. at 3.) As a result, he sustained "12% TBSA [total body surface area] third degree burns involving his lower arms, chest, and face." (Pl. Br. at 3.) Because of the severity of the burns and a concern for compartment syndrome, Plaintiff underwent various surgical treatments, including debridement, bilateral medial forearm fasciotomies to prevent tissue death due to decreased blood flow, and xenografting to aid in the closing of the incisions from the other surgeries. (Pl. Br. at 3; R. at 846.) From

November 9, 2011 to April 29, 2013, Plaintiff was granted a closed period of disability for impairments resulting from his burns and an "anxiety related disorder."[1] (R. at 70.) He then filed an application on February 20, 2015 for a second closed period of disability from November 17, 2013 to February 1, 2016, which is the subject of this appeal. (Pl. Br. at 2.) That application was denied initially on July 2, 2015 and upon reconsideration on January 8, 2016. (R. at 10.) A hearing was held before Administrative Law Judge ("ALJ") Carla Waters on September 28, 2017 during which Plaintiff, represented by his attorney, testified about his impairments and symptoms. (R. at 10.) In her decision (R. at 10–21) issued on April 25, 2018, the ALJ found Plaintiff was not disabled and had the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b). (R. at 14, 20.) In determining this RFC, the ALJ relied on the medical opinions of Dr. Krishna Mallik, Dr. Jason Fritzell, and Dr. Aaron Bowen. (R. at 20.) The decision was upheld by the Appeals Council on November 28, 2018. (R. at 1–3.)

The issues presented to this Court for review are: (1) whether the ALJ erred in assigning "minimal weight" to the opinions of Dr. Scott, a treating physician, and Dr. Peachey, an examining physician, and instead assigning "great weight" to the opinion of a non-treating, non-examining physician, Dr. Krishna Mallik in formulating Plaintiff's RFC; and (2) whether the ALJ erred in rejecting Plaintiff's pain and symptom testimony. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.[2] *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability

---

[1] Plaintiff was diagnosed with post-traumatic stress disorder following the accident. (R. at 855; Pl. Br. at 3.)

[2] While the initial Disability Determination and Transmittal document (R. at 97) for the application at issue lists "burns (NOS)" and "epilepsy" as primary and secondary diagnoses, respectively, Plaintiff asserts that only his "chronic pain and dysfunction in both arms during the relevant period[] are the basis of this appeal." (Pl. Br. at 3.) Accordingly, the Court limits its review to these alleged impairments.

determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is

not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

**A. The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

In evaluating a claimant's pain and symptom testimony, the ALJ must engage in a two-step analysis. First, she must determine whether claimant has produced objective medical evidence of an underlying impairment. Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain and symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, because the ALJ found underlying impairments of "nerve damage in both arms, third degree burns, muscle spasms, and the inability to hold objects due to lack of strength in hands and arms" (R. at 15) and cited no evidence of malingering, she must provide specific, clear, and convincing reasons to reject Plaintiff's pain and symptom testimony.

"An ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Moreover, if the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the social security context). The ALJ may consider "[the claimant's] reputation for truthfulness, inconsistencies either in his

testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ rejected Plaintiff's statements as "not entirely consistent with the medical evidence and other evidence in the record."[3] (R. at 15.) In support of this conclusion, the ALJ makes numerous references to specific evidence in the record, including objective medical evidence as well as Plaintiff's activities, and also notes statements made by Plaintiff.

The ALJ cites two EMGs performed on May 29, 2012 and February 21, 2013,[4] which, according to Plaintiff's treating physician, Dr. Jeffrey Scott, were "normal," despite the fact that "[Plaintiff] alleged during this time, he had very little improvement in his hands." (R. at 16, 17, 824.) The ALJ also noted that Plaintiff scored 5/5 on muscle and grip strength tests performed by an examining physician, Dr. John Peachey. (R. at 19, 894.) The ALJ further noted that "[i]n spite of his constant complaints about hand impairments, the [Plaintiff] said on April 25, 2015 that he coaches an adult softball league, worked as a welder in October, and plays golf," citing records from Plaintiff's psychiatric evaluation. (R. at 17, 879.) During this evaluation, Plaintiff also stated that he was no longer able to play baseball because he is "in pain all of the time." (R. at 881.) However, the ALJ referenced treatment notes from a July 22, 2015 visit to Mountain Park Health Center[5] in which the physician noted some edema of Plaintiff's right hand, which was attributed to trauma he sustained while playing baseball. (R. at 17, 958.) The ALJ noted that records

---

[3] The ALJ also found "nothing in the record indicating claimant is limited in his ability to work due to seizures." (R. at 18.) However, because Plaintiff's opening brief states he "does not assert disability based on a seizure disorder," the Court will not review the legitimacy of this reason. (Pl. Br. at 3.)

[4] The ALJ misstated the date of this EMG on page 16 of the record, but correctly stated it on page 17.

[5] The ALJ misstated the name of the clinic as "Mountain Park Hand Center" in her decision. The corrected name is from the exhibit referenced by the ALJ. (R. at 958.)

from this same visit also disclosed that Plaintiff had fractured his nose while playing baseball "several months" prior. [6] (R. at 17, 958.)

The Court finds that the above evidence cited by the ALJ does undermine the statements made by Plaintiff. Though the ALJ did not always directly link each piece of cited evidence to a particular statement made by Plaintiff, the ALJ has nonetheless cited sufficient evidence in the record and statements[7] by Plaintiff to enable this Court to reasonably discern her path and meaningfully determine that her conclusions are indeed supported by substantial evidence. Thus, the Court finds the above reasons sufficiently specific, clear, and convincing and supported by substantial evidence in the record.

Additionally, the ALJ found that Plaintiff's "failure to follow medical advice and recommendations suggests his symptoms were not as severe as alleged." (R. at 17.) The ALJ references a laboratory test dated May 12, 2015 that indicated Plaintiff may not have been taking his medication as prescribed by Dr. Scott. (R. at 915.) Such noncompliance may be sufficient to deny benefits outright, or at the very least, support an adverse credibility determination. *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."); *Fair v. Bowen*, 885 F.2d 597, 603 (a claimant's failure to assert one "good" reason for failing to comply with treatment "can cast doubt on the sincerity of the claimant's pain testimony").

Specifically, Plaintiff was supposed to be taking Norco, a pain medication consisting of hydrocodone and acetaminophen, both of which were not detected in the screen. (R. at 915-16.) However, oxycodone was detected in the screen. (R. at 915.) The specimen for this screen was collected from Plaintiff on May 6, 2015 (R. at 915.) Five days later on May 11, 2015, Plaintiff had an appointment with Dr. Scott, who noted, "[Plaintiff]

---

[6] Plaintiff was also treated for a small wound on his left toe he got while playing basketball on February 10, 2016. (R. at 950.)

[7] *See, e.g.,* R. at 16 ("He alleged . . . he had very little improvement"); R. at 17 ("In spite of his constant complaints . . . "); R. at 17 ("He said his pain had worsened."); R. at 18 (" . . . claimant's excessive elaborations about his limitations while he admitted he could play on a smart phone, golf, and work as a welder.").

is reporting problems with the [N]orco managing his arm pain. We have had to go through opioid cycling before. I will put him back on oxycodone." (R. at 962–633.) Moreover, records from Dr. Scott indicate that Plaintiff had undergone surgery[8] for his fractured nose from the baseball incident previously discussed and that his surgeon had prescribed him Percocet, which may account for the "unexpected" presence of oxycodone. (R. at 17, 962.) The Court is not convinced by the ALJ's reasoning that because Plaintiff was not taking a *particular* painkiller prescribed to him by his treating physician, "his symptoms were not as severe as alleged." In reality, Plaintiff was still taking *a* painkiller during this time of "noncompliance," and one that was actually prescribed to him by a surgeon and later his regular treating physician. While the Court finds this reason to be specific and clear, it does not find it convincing.

Nonetheless, as previously noted, the ALJ has proffered various other reasons which are convincing, as well as clear and specific. One invalid reason found in the presence of valid reasons amounts to nothing more than "harmless error," as such an error is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008). Therefore, the Court finds that the ALJ did not commit legal error in rejecting Plaintiff's pain and symptom testimony.

### B. The ALJ did not err in assigning "minimal weight" to the opinions of Dr. Scott and Dr. Peachey and "great weight" to the opinion of Dr. Krishna Mallik in formulating Plaintiff's RFC.

"In conjunction with the relevant regulations, [the Ninth Circuit] has … developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Garrison*, 759 F.3d at 1012. The ALJ is obligated to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The general rule is that the greatest evidentiary weight is given to

---

[8] Whether Plaintiff actually underwent surgery is unclear as treatment notes from Mountain Park Health Center note he declined surgery. (R. at 958.) Nevertheless, he had obtained a valid prescription from the surgeon as per the CSPMP (Controlled Substances Prescription Monitoring Program). (R. at 962.)

the opinion of a treating physician; lesser weight is given to that of a non-treating, examining physician; and the opinion of a non-treating, non-examining physician is given the least weight, relatively. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 1527(c)(1). Treating physicians are given this deference because they are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) (stating that treating sources "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"). Relevant factors for the ALJ to consider in assigning weight to the opinion include the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the extent the opinion is supported by medical signs and laboratory findings, consistency with the record as a whole, the specialization of the physician, and "other factors." 20 C.F.R. §§ 404.1527(c)(2)–404.1527(c)(6).

When a conflict exists between medical opinions, the ALJ must resolve it. *Morgan*, 169 F.3d at 601. However, if, in resolving inconsistent medical opinions, the ALJ chooses to reject or assign minimal weight to an opinion of a treating or examining physician, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotations and citation omitted). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. An ALJ may properly reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a treating physician's opinion that "was in the form of a checklist, did not have supportive objective

evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain").

### 1. The ALJ provided specific and legitimate reasons supported by substantial evidence for assigning "minimal weight" to the opinion of treating physician Dr. Scott.

In his assessment, Dr. Scott restricted Plaintiff's ability to "stand/walk" to two hours or less in an eight-hour work day. (R. at 870.) However, the ALJ found "no corresponding impairment which would give rise to such a restriction and no explanation regarding this restriction other than to suggest it might be caused by pain and fatigue." (R. at 19.) The assessment, in the form of a checklist/questionnaire, contained a section titled "Comments" in which the Dr. Scott could have elaborated on his restriction. (R. at 870.) However, he left this blank. Moreover, in none of Dr. Scott's treatment notes (R. at 821–865, 962–976) is there any documentation or mention of an impairment involving Plaintiff's lower extremities, nor did Plaintiff ever complain of any impairment involving his lower extremities. In fact, Dr. Peachey, when asked if Plaintiff had any limitations in standing or walking, answered, "No." (R. at 896.) The ALJ therefore properly rejected Dr. Scott's opinion because it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

Plaintiff, however, contends that the ALJ is "not qualified, as an administrative adjudicator, to provide an independent analysis of medical evidence, that is, decide on her own that there were insufficient findings in this record to support the treating physician's opinion." (Pl. Br. at 14.) The Court agrees with Defendant that it is precisely the ALJ's job to determine the weight to give a medical opinion. Specifically, 20 C.F.R. § 404.1527(c)(4), provides that "consistency . . . with the record as a whole" is a relevant factor for the ALJ to consider in determining how much weight to afford a medical opinion, including that of a treating physician. Additionally, 20 C.F.R. § 404.1527(c)(3) provides that an ALJ may consider how well the opinion is supported:

> The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.

Thus, the ALJ was free to consider both the extent to which the opinion is consistent with the record "as a whole" and the degree to which it is supported by the record. Here, substantial evidence in the record is inconsistent with Dr. Scott's opinion and there is no documentation of any impairment to support it.

Because Dr. Scott presented no clinical evidence to support his opinion that Plaintiff be precluded from standing or walking more than two hours in an eight-hour workday, the ALJ properly rejected his opinion.[9]

### 2. The ALJ provided specific and legitimate reasons supported by substantial evidence for assigning "minimal weight" to the opinion of examining physician Dr. Peachey.

Dr. Peachey opined that Plaintiff could "never" reach, handle, finger, or feel "based upon the numbness on his hands." (R. at 897.) The ALJ rejected this opinion, finding it "contrary to the medical record" and with "no explanation of why the claimant would be unable to reach . . . or why the limits would be bilateral since the evidence indicates that the claimant's right arm is the arm affected." (R. at 19.)

In demonstrating the contradictory nature of the opinion, the ALJ refers to Dr. Peachey's own assessment in which he had noted that all of Plaintiff's ranges of motion were "normal" or "within normal limits." (R. at 894.) Dr. Scott, too, noted Plaintiff's range

---

[9] The Court notes that the ALJ also rejected Dr. Scott's opinion under the mistaken belief that he had completed the assessment six months after his last appointment with Plaintiff. However, the record shows that Dr. Scott had in fact seen Plaintiff on February 9, 2015, just days before Dr. Scott completed the assessment on February 13, 2015. (R. at 872, 903.) The Court finds this error is harmless. Because the ALJ has proffered at least one reason that is sufficiently specific and legitimate and supported by substantial evidence, the error is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008).

of motion as "full." (R. at 975.) Additionally, the ALJ noted Plaintiff's ability to play baseball (R. at 958) and perform intermittent HVAC work (R. at 40–42) further contradicted the opinion. (R. at 19.) Plaintiff contends that the ALJ's reference to him playing baseball is improper because the pertinent record provides "no details about the actual activity involved." (Pl. Br. at 17.) However, Defendant contends, and the Court agrees, that the ALJ's interpretation of that record was rational. As a reviewing court, we must uphold rational interpretations of the ALJ "[w]here the evidence is susceptible to more than one rational interpretation." *Thomas*, 278 F.3d at 954.[10]

As previously noted, the extent to which a medical opinion is supported by medical evidence and is consistent with the record as a whole are relevant factors for the ALJ to consider in assigning weight to a medical opinion. Thus, the ALJ did not improperly reject Dr. Peachey's brief, conclusory, and unsupported assessment concerning Plaintiff's inability to reach. *See id.* at 957.

### 3. The opinion of Dr. Krishna Mallik is substantial evidence that the ALJ could properly use to support the rejection of the opinions of Dr. Scott and Dr. Peachey.

"The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Dr. Mallik opined that Plaintiff was not disabled and was capable of working at the medium exertional level "with some minor accommodations for bilateral hands." (R. at 114.) In forming this opinion, Dr. Mallik reviewed Plaintiff's records, including the assessments of Drs. Scott and Peachey. She stated that "objective examinations do not support [their] conclusions" and that their

---

[10] Moreover, substantial evidence in the record suggests that Plaintiff's right arm is indeed the "arm affected" as Dr. Scott had noted that the prescribed restrictions of "no forceful gripping or grasping" applied only to Plaintiff's right arm, which is "significantly weaker" and "more affected by his industrial injury." (R. at 832.) JAMAR scores from various appointments with Dr. Scott between November 10, 2014 and November 19, 2015 also show that Plaintiff's right arm is significantly weaker than the left. (R. at 900, 903, 906, 965, 968.)

"[c]onclusions are based on claimant's subjective reports and not based on objective data." (R. at 114.) Specifically, Dr. Mallik found Plaintiff's allegation that he had "no strength" in his hands and arms unsupported by the medical evidence, referencing Dr. Peachey's assessment where he noted that Plaintiff had 5/5 muscle strength in both arms and 5/5 hand function and grip strength. (R. at 114, 894.) She further noted a psychiatrist's assessment in which Plaintiff was observed playing on a smartphone in the waiting room and had told the psychiatrist he played golf and worked full-time as a welder. (R. 114, 875, 879.) This led her to "significantly question" Plaintiff's credibility and alleged lack of strength and ability to grip. (R. at 114.) Because her opinion is based on, and consistent with, clinical findings and other evidence in the record, it is substantial evidence that the ALJ properly used, in addition to the other reasons previously discussed, to reject the opinions of Drs. Scott and Peachey.

**IT IS THEREFORE ORDERED** affirming the April 25, 2018 decision of Administrative Law Judge Carla Waters, as upheld by the Appeals Council on November 28, 2018.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 5th day of November, 2019.

Honorable John J. Tuchi
United States District Judge